UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                              :

NORIKO OZAWA, on behalf of herself and all   :
others similarly situated,                     :
                              :

                    Plaintiff,  :
                              :        13-CV-1282 (JPO)

             -v-             :
                              :       <u>OPINION AND ORDER</u>

ORSINI DESIGN ASSOCIATES, INC., and     :
SUSAN F. ORSINI,                     :
                              :

                  Defendants.  :
                              :
---------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

     In this suit, Plaintiff Noriko Ozawa ("Ozawa" or "Plaintiff") asserts claims under the

federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") stemming

from her employment by Defendant Orsini Design Associates, Inc. ("ODA"), and its principal,

Defendant Susan F. Orsini ("Orsini"; collectively with ODA, "Defendants").  Defendants have

interposed a counterclaim against Ozawa under New York state law for unjust enrichment.  Now

before the Court are the parties' cross-motions for summary judgment, as well as Ozawa's

motion to strike a paragraph of an affidavit by Orsini.  For the reasons that follow, Ozawa's

motion for partial summary judgment is granted in part and denied in part, and Defendants'

motion for summary judgment is granted in part and denied in part.  Ozawa's motion to strike is

denied.

## I.      Background

### A.      Factual Background[1]

ODA is an interior design company whose president and sole owner is Susan Orsini. (Dkt. No. 110 ("Pl. 56.1 Response") ¶¶ 1, 4.)  Ozawa was responsible to Orsini, who had "ultimate authority" over all of ODA's employees.  (Dkt. No. 108 ("Def. 56.1 Response") ¶¶ 3-4.)  Ozawa was an employee of ODA between June 21, 2010, and October 30, 2012.  (Pl. 56.1 Response ¶ 6.)  Ozawa's starting salary was $60,000 per year.  (Id. ¶ 14.)  From June 30, 2012, until the end of Ozawa's employment, her salary was reduced to $50,000 per year.  (Def. 56.1 Response ¶ 15.)  Timesheets prepared during Ozawa's employment reflect that she worked more than 40 hours during a number of weeks of her employment, but she was not paid overtime for this time.  (Id. ¶¶ 12, 16.)

According to Ozawa, her main function was as an administrative assistant to Orsini, carrying out tasks like scheduling, printing, shipping packages, making restaurant and travel reservations, handling aspects of Orsini's wedding preparations, and performing other tasks to assist Orsini.  (Id. ¶¶ 21-39.)  Defendants, on the other hand, assert that Ozawa's responsibilities were those of the "chief administrator/office manager," and that she took on significant responsibility to oversee ODA personnel, technology systems, and policymaking.  (Pl. 56.1 Response ¶¶ 18-23.)  As a result, Defendants argue, Ozawa was exempt from the requirements of the FLSA and the NYLL, and therefore was not entitled to overtime pay.  As further detailed below, each side contests the other's characterization of facts in the record, and the parties dispute certain key facts.

---

[1] The following facts are taken from the parties' submissions relating to the cross-motions for summary judgment and are undisputed, unless otherwise noted.

### B.       Procedural History

Ozawa filed this suit on February 26, 2013, asserting claims for violation of state and federal wage and hour laws.  (Dkt. No. 1.)  Defendants answered the complaint and asserted a counterclaim against Ozawa for unjust enrichment.  (Dkt. No. 6.)  Subsequently, Plaintiff filed an amended complaint, which adds a claim for retaliation arising out of Defendants' filing of a counterclaim.  (Dkt. No. 10.)

While Ozawa initially filed the suit as a putative Rule 23 class action and as a putative collective action under the FLSA, she later indicated that she would not seek class certification.  (*See* Dkt. No. 81.)  On August 15, 2014, Ozawa and Defendants filed cross-motions for summary judgment.  (Dkt. Nos. 91, 97.)  On September 8, 2014, Ozawa also moved to strike a paragraph of an affidavit filed by Orsini in support of Defendants' motion for summary judgment.  (Dkt. No. 109.)

## II.    Discussion

### A.       Cross-Motions for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the party bearing the burden of proof at trial must come forward with evidence on each element of its claim or defense illustrating its entitlement to relief.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  It cannot rely upon mere

"conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51. The court should view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

### 1.      FLSA and NYLL Wage and Hour Claims

"Congress enacted the FLSA in 1938 to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (quoting 29 U.S.C. § 202(a)). "Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 1/2 times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (citing 29 U.S.C. § 207(a)). New York law contains analogous provisions that also mandate the payment of overtime. *See Reiseck*, 591 F.3d at 105.

The wage and hour laws contain exemptions for certain categories of employees, including for "any employee employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1).[2] "[A]dministrative employees, *inter alia*, are exempt from the overtime pay provision of the FLSA." *Reiseck*, 591 F.3d at 104-05. The FLSA itself does not define the term

---

[2] "The NYLL . . . applies the same exemptions as the FLSA." *Reiseck*, 591 F.3d at 105 (citing N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2).

"administrative"; instead, it delegates the interpretation of the term to the Secretary of Labor. *See Reich v. New York*, 3 F.3d 581, 587 (2d Cir. 1993), *overruled by implication on other grounds by Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). "[B]ecause the FLSA is a remedial act, its exemptions . . . are to be narrowly construed." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The employer bears the burden of establishing that its employee falls within a FLSA exemption. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Whether an exemption applies to a particular employee "is a mixed question of law and fact" that depends upon "the [employee's] actual job characteristics and duties" and requires consideration of "all the facts in a particular case." *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (internal quotation marks omitted). Because "[w]hether an employee is exempt from the overtime pay provisions is a fact intensive inquiry," *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 703 (S.D.N.Y. 2005) (internal quotation marks omitted), "[e]ven where there has been full discovery, courts are often reluctant to grant summary judgment based on [a FLSA] exemption . . . ." *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361 (PGG), 08 Civ. 11364 (PGG), 2010 WL 1327242, at *7 (S.D.N.Y. Mar. 31, 2010).

The administrative exemption applies to "those employees who (1) are compensated on a salary or fee basis at a rate no less than $455 per week; (2) 'whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 637-38 (S.D.N.Y. 2013) (quoting 29 C.F.R. § 541.200(a)(1)-(3)) (brackets omitted). "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must

be determined on the basis of whether the employee's salary and duties meet the requirements of

the regulations . . . ."  29 C.F.R. § 541.2.  An employee's "primary duty" depends on such factors

as "the relative importance of the exempt duties as compared with other types of duties; the

amount of time spent performing exempt work; the employee's relative freedom from direct

supervision; and the relationship between the employee's salary and the wages paid to other

employees for the kind of nonexempt work performed by the employee."  29 C.F.R.

§ 541.700(a).  The amount of time an employee spends performing exempt work, as opposed to

nonexempt work, is a "useful guide in determining whether exempt work is the primary duty of

the employee," but "[t]ime alone . . . is not the sole test."  *Id.* § 541.700(b).

### a.      Salary requirement

It is undisputed that Ozawa's salary satisfies the first prong of the administrative

exemption: her salary, which ranged from $50,000 to $60,000 per year during the course of her

employment at ODA, well exceeds the minimum of $455 per week set in the regulations.  *See* 29

C.F.R. § 541.200(a)(1).

### b.      Directly related to management or general business operations

The second query for purposes of the administrative exemption is whether Ozawa's

"primary duty is the performance of office or non-manual work directly related to the

management or general business operations of the employer or the employer's customers."  29

C.F.R. § 541.200(a)(2).  To meet this requirement, "an employee must perform work directly

related to assisting with the running or servicing of the business," rather than, for instance,

manufacturing goods or selling products in a retail establishment.  *Id.* § 541.201(a).

The case law in the Second Circuit has clarified that the central question involved in this

second prong of the administrative exemption focuses on whether the central functions of a

particular job involve either administrative functions, on one hand, or production, on the other.

6

*See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531-32 (2d Cir. 2009) ("Employment may thus be classified as belonging in the administrative category, which falls squarely within the administrative [exemption], or as production/sales work, which does not."); *see also Reich*, 3 F.3d at 587-88.  Thus, an employee who produces goods or provides services[3] that constitute the "primary function" of the employer's business is engaged in production, whereas an employee who does not falls on the administrative side.  *Reich*, 3 F.3d at 587.  For this inquiry, it does not matter how important the employee's duties were to the employer, nor how independently the employee performed them.  *See Davis*, 587 F.3d at 532-33 & n.4 (noting that "the border between administrative and production work does not track the level of responsibility, importance, or skill needed to perform a particular job," but stating that those considerations "may be relevant to other, independent, requirements for exemption from the FLSA overtime provisions").  Furthermore, "[w]hat determines whether an [employee] performed production or administrative functions is the nature of her duties, not the physical conditions of her employment."  *Id.* at 533.

Here, under both parties' view of the facts, Ozawa's primary duty fell on the administrative side of the production/administration line.  ODA's principal function as a business is to provide interior design services to clients (Def. 56.1 Response ¶ 2), and it is undisputed that none of Ozawa's duties were design-related (*id.* ¶ 1).  Rather, her responsibilities were composed of the functional areas specifically denoted in the regulations as directly related to management or general business operations, including "finance; accounting; budgeting; . . . purchasing; procurement; . . . personnel management; human resources; employee benefits; . . . and similar activities."  29 C.F.R. § 541.201(b).  Accordingly, the evidence establishes beyond genuine

---

[3] Of course, it is clear that "production," for purposes of the regulations regarding the administrative exemption, does not require that an employer's business involve the manufacture of tangible goods.  *See Davis*, 587 F.3d at 532.

dispute that Ozawa's primary function was directly related to management or general business operations.

### c.   Exercise of discretion and independent judgment with respect to matters of significance

The "exercise of discretion and independent judgment" generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). This requirement "implies that the employee has authority to make an independent choice, free from immediate direction or supervision," although "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.* § 541.202(c). The factors to be considered in whether an employee exercises discretion and independent judgment include, but are not limited to, the following:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). But "independent judgment is not foreclosed by the

fact that an employee's work is performed in accordance with strict guidelines." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 476 (S.D.N.Y. 2008) (quoting *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 875 (7th Cir. 2008)) (internal quotation marks omitted).  "[A]n employee does not exercise independent judgment with respect to matters of significance 'merely because the employer will experience financial losses if the employee fails to perform the job properly.'" *Ebert v. Holiday Inn*, No. 11 Civ. 4102 (ER), 2014 WL 349640, at *11 (S.D.N.Y. Jan. 31, 2014) (quoting 29 C.F.R. § 541.202(f)).  Finally, the regulations specifically exclude secretarial work from the administrative exemption: "The exercise of discretion and independent judgment . . . does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work."  29 C.F.R. § 541.202(e).

The Second Circuit has summarized this factor of the administrative exemption test by stating that "the deployment of discretion and judgment is manifested by the authority to formulate, affect, interpret, or implement the employer's management policies or its operating practices, by involvement in planning the employer's long-term or short-term business objectives, or by the carrying out of major assignments or committing major financial resources in the conduct of the employer's business." *Pippins v. KPMG, LLP*, 759 F.3d 235, 240-41 (2d Cir. 2014) (quoting *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155-56 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012)) (brackets and internal quotation marks omitted).

The Court concludes that disputed issues of material fact as to this factor preclude summary judgment on the administrative exemption.  According to Ozawa's version of events, she spent at least 85% of her time on secretarial tasks.  (Dkt. No. 103 ("Palitz Decl.") Ex. 5 ("Ozawa Aff.") ¶ 2.)  She says that she "could not deviate from the Defendants' policies,

directives, and procedures," or she would "face discipline." (*Id.* ¶ 13.)  Ozawa also states that

she "did not have authority to negotiate and bind the company on significant matters" (*id.* ¶ 9),

and that she did not "resolve matters of significance on behalf of management" (*id.* ¶ 16).

Among other evidence, Ozawa points to an incident in November 2011 when Ozawa scheduled a

staff meeting to discuss billing and other office practices.  (Dkt. No. 112 ("Second Palitz Decl.")

Ex. 16, at LSS-1613.)  When Ozawa informed Orsini that she had scheduled the meeting, Orsini

responded, "You are not authorized to have a staff meeting.  I will schedule at the appropriate

time." (Palitz Decl. Ex. 7, at LSS-441.)

Defendants tell a different story.  Orsini testified at her deposition that Ozawa directed

"[a]lmost the entire staff" of ODA other than Orsini herself.  (Dkt. No. 93 ("Ross Aff.") Ex. C

("Orsini Depo.") at 55-56.)  Furthermore, Orsini asserts that Ozawa had broad responsibilities for

overseeing personnel matters and billing, maintaining computer and telephone systems, and

enforcing ODA company policies.  (Dkt. No. 94 ("Orsini Aff.") ¶¶ 21, 23-27.)[4]  Ozawa disputes

Defendants' account of her responsibilities.  (Pl. 56.1 Response ¶¶ 18-23.)

---

[4] Defendants also rely on a job description that Ozawa drew up in November 2010, which
includes a heading labeled "Supervisory responsibility" and entries like "Supervise/train staff"
and "Maintain acceptable office appearance and demeanor" (Ross Aff. Ex. H, at 1), and a
version of Ozawa's resume that summarizes her experience at ODA (Ross Aff. Ex. Q).  But "the
regulations make clear that these questions should be resolved by examining the employees'
actual job characteristics and duties."  *Myers*, 624 F.3d at 548.  Thus, "even where an
employee's job description appears to exempt him from eligibility for FLSA overtime pay, if that
employee's actual duties vary from the seemingly exempt description, such that they are engaged
primarily in rote, manual, and non-discretionary tasks, he would be misclassified, despite the
exempt nature of his job description." *Indergit*, 293 F.R.D. at 638; *see also Martinez v. Hilton
Hotels Corp.*, 930 F. Supp. 2d 508, 525 n.16 (S.D.N.Y. Mar. 15, 2013) ("[R]ésumés are not
dispositive of whether management was Plaintiffs' primary duty because the determination of
whether or not an employee qualifies as exempt under the regulations focuses on evidence
regarding the actual day-to-day activities of the employee rather than more general job
descriptions contained in resumes, position descriptions, and performance evaluations." (internal
quotation marks, brackets, and ellipsis omitted)).

On review of the summary judgment record, the Court concludes that the parties'

disagreements go beyond the characterization of undisputed facts in the record.  Rather, the

parties differ on crucial factual questions concerning the makeup of Ozawa's duties and the

degree of independence Ozawa could exercise in carrying out those duties.[5]  A reasonable jury

could decide the question of Ozawa's exempt status in favor of either party, and accordingly,

material factual disputes preclude a decision as a matter of law.  Both parties' motions for

summary judgment on the issue of the applicability of the administrative exemption are denied.

### 2.    Willfulness

Defendants move for summary judgment on the issue of willfulness, while Ozawa

contends that disputed issues of material fact preclude summary judgment on this issue.

Pursuant to 29 U.S.C. § 255(a), a willful violation of the FLSA carries with it an extended

limitations period of three years, as opposed to the usual two-year period.  *See Nakahata v. N.Y.-*

*Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 n.4 (2d Cir. 2013) (citing 29 U.S.C.

§ 255(a)).  "To prove a willful violation of the FLSA within the meaning of § 255(a), it must be

established that the employer either knew or showed reckless disregard for the matter of whether

its conduct was prohibited by the statute."  *Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d

62, 71 (2d Cir. 2014) (brackets and internal quotation marks omitted).  "Mere negligence is

insufficient."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  Accordingly,

"Plaintiffs must prove more than that defendant 'should have known' it was violating the law.

'Should have known' implies a negligence or 'reasonable person' standard.  Reckless disregard,

in contrast, involves actual knowledge of a legal requirement, and deliberate disregard of the risk

---

[5] While the evidence in the record at summary judgment appears to support Ozawa's version of
the facts more than Orsini's, a "judge's function at summary judgment is not to weigh the
evidence and determine the truth of the matter but to determine whether there is a genuine issue
for trial."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted).

that one is in violation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38

(S.D.N.Y. 2013).  Because willfulness involves a factual inquiry, "[c]ourts in this Circuit have

generally left the question of willfulness to the trier of fact." *Solis v. SCA Rest. Corp.*, 938 F.

Supp. 2d 380, 393 (E.D.N.Y. 2013) (citing cases).  The plaintiff bears the burden of proof to

demonstrate willfulness. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).

At her deposition, Orsini said that her employees conducted "periodic review" of ODA's

compliance with the FLSA with ODA's attorneys, accountants, and administrative staff.  (Orsini

Depo. at 77-78.)  Orsini did not conduct these reviews herself, however; rather, she delegated

this task to personnel in her office, and said she "assumed" that the "administrators were doing

their job." (*Id.* at 78.)  Orsini also asserted that she "rel[ied] on [the] administrators and

operations people's general confidence," but did not know what steps they took to ensure that

ODA complied with the FLSA or NYLL.  (*Id.* at 81.)  In later affidavits, Orsini stated that she

had consulted with attorneys and accountants regarding whether the position held by Ozawa's

predecessor required overtime pay.[6]  Orsini says she was told the position "could be properly

classified as exempt."  (Orsini Aff. ¶ 18; Dkt. No. 107 ("Second Orsini Aff.") ¶ 34.)[7]

Genuine factual questions remain regarding whether Defendants' conduct was willful.

Principally, as determined above, disputed issues of material fact preclude summary judgment on

---

[6] Ozawa contends that Orsini's affidavits contradict her earlier deposition testimony and
therefore should be disregarded.  (Dkt. No. 111 ("Ozawa Opp.") at 19.)  "[A] party may not
create an issue of fact by submitting an affidavit in opposition to a summary judgment motion
that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v.
N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  The Court need not decide this question
here, however, because factual questions remain even if Orsini's affidavit is disregarded.

[7] Ozawa also asserts that Defendants' overtime policy—to pay overtime as "straight time," and
only to those employees earning under $50,000 per year—demonstrates willfulness.  (Ozawa
Opp. at 17.)  Of course, the application of such a policy to FLSA-exempt employees would not
violate the law, although it is unclear whether this policy was in fact applied solely to exempt
employees.  At trial, the jury may consider this evidence in determining whether any violation of
the law by Defendants was willful.

the question whether Ozawa was in fact exempt from the requirements of the FLSA; the

resolution of the willfulness question depends in significant part on that question.  Furthermore,

the evidence concerning willfulness in the present record is simply not conclusive of the issue.

*See Hart*, 967 F. Supp. 2d at 937 (ruling that willfulness "cannot be determined . . . on a motion

for summary judgment [where] the evidence on which plaintiffs principally rely is not conclusive

as to that point"); *see also Velasquez v. Digital Page, Inc.*, No. 11 Civ. 3892, 2014 WL 6460801,

at *3 (E.D.N.Y. Nov. 17, 2014) (denying summary judgment on willfulness due to material

factual disputes where defendant asserted that they relied on counsel to determine exempt status).

Accordingly, Defendants' motion for summary judgment as to willfulness is denied.

### 3.     Liquidated Damages

Ozawa moves for summary judgment on the issue of whether Defendants are liable for

liquidated damages.  (Dkt. No. 102 ("Ozawa Br.") at 22.)  The FLSA and NYLL both allow

plaintiffs who establish wage and hour claims to be awarded an additional amount of liquidated

damages unless the employer demonstrates good faith.  *See* 29 U.S.C. § 260; N.Y. Labor Law

§ 198(1-a); *see also Hart*, 967 F. Supp. 2d at 937 ("The willfulness standards for the FLSA

statute of limitations and NYLL liquidated damages do not differ to any appreciable extent."

(internal quotation marks omitted)).  Under the FLSA, "[t]he employer bears the burden of

proving good faith and reasonableness, but the burden is a difficult one, with double damages

being the norm and single damages the exception.  To establish good faith, the employer must

take active steps to ascertain the dictates of the FLSA and then act to comply with them."

*Herman*, 172 F.3d at 142 (citation omitted).  The NYLL also places the burden of establishing

good faith on the employer.  *See Chenensky v. N.Y. Life Ins. Co.*, Nos. 07 Civ. 11504 (WHP), 09

Civ. 3210 (WHP), 2012 WL 234374, at *2 (S.D.N.Y. Jan. 10, 2012).

For the same reasons noted above with regard to willfulness, disputes of material fact preclude a determination on good faith at this stage. Accordingly, Ozawa's motion for summary judgment on liquidated damages is denied.

### 4.   Whether Orsini Was Ozawa's "Employer"

An individual may be held liable under the FLSA if she is an "employer," which the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As explained by the Second Circuit, the "overarching concern" in answering this question "is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citation omitted). The "economic reality" test, as relevant to this inquiry, relies on four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (internal quotation marks omitted). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142-43 (2d Cir. 2008).[8]

Orsini, the president and sole shareholder of ODA, stated at her deposition that she had the power to hire and fire personnel at ODA and to control their salaries. (Orsini Depo. at 28-36, 54.) She testified that she, along with another of ODA's employees, set the employees' work schedules. (*Id.* at 54.) Along with several other ODA employees, Orsini had the authority to

---

[8] While the New York Court of Appeals "has not yet answered the question of whether the test for 'employer' status is the same under the FLSA and the NYLL, . . . courts have generally assumed that it is." *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 521 n.2 (S.D.N.Y. 2014) (citing cases). Accordingly, the Court's consideration of the employment relationship under the FLSA also applies to the NYLL claims.

14

give initial approval for overtime work. (*Id.* at 71.) Orsini alone ultimately authorized the payment for such overtime during periodic reviews of summaries of employees' hours. (*Id.* at 86-87.) She also evaluated certain employees' performance and approved their leave time. (*Id.* at 26.) Orsini invited Ozawa to apply for the job at ODA; along with Ozawa's predecessor, Orsini made the decision to hire Ozawa, and Orsini signed a letter offering Ozawa the position. (*Id.* at 102, 104-05.) Within about a month of starting work at ODA, Ozawa reported directly to Orsini. (*Id.* at 107; Pl. 56.1 Response ¶ 16.) Orsini said that she made the decision to remove some of Ozawa's responsibilities in July 2011 after she found errors in Ozawa's work. (Orsini Depo. at 151-52.) And last, while there is little evidence that Orsini was personally involved in maintaining employment records—as pertinent to the fourth factor of the economic reality test— the fact "that this fourth factor is not met is not dispositive." *Herman*, 172 F.3d at 140.

The evidence that Ozawa has presented demonstrates that Orsini meets the definition of an employer under the economic reality test, and Defendants have not met their burden of establishing that there is a genuine factual dispute as to this issue.[9] Accordingly, summary judgment is granted in Ozawa's favor on the issue of whether Orsini was her employer for purposes of the FLSA and the NYLL.

### 4. Retaliation

The FLSA bars employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(3). New York law contains a similar provision. *See* N.Y. Labor Law § 215. Ozawa contends that Defendants violated these federal and state retaliation provisions by filing an unjust enrichment counterclaim

---

[9] Defendants do not address this issue in their opposition to Plaintiff's motion for summary judgment.

against her as a reprisal against her for filing this wage and hour suit.  (Dkt. No. 10 ("Am. Compl.") ¶¶ 70-77.)

A prima facie case of retaliation requires the plaintiff to show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an [adverse] action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."[10]  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (per curiam); *see also Lore v. City of Syracuse*, 670 F.3d 127, 156-57 (2d Cir. 2012) (describing elements of a retaliation claim in the context of a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(a) *et seq.*).  Once a prima facie case is established,

> the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the [adverse] action.  If the defendant meets this burden, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the [adverse] action.

*Mullins*, 626 F.3d at 53-54 (citation and internal quotation marks omitted).

First, Defendants argue that Ozawa's retaliation claim fails because Ozawa "cannot demonstrate any adverse employment action," since her employment had ended months before Defendants' institution of the counterclaim.  (Dkt. No. 96 ("Def. Br. in Supp.") at 23.)  The Second Circuit has concluded that, to be liable for retaliation under Title VII,[11]  an employer need not necessarily take an action directly related to a person's employment.  *See Lore*, 670 F.3d at 163 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

---

[10] The elements of a retaliation claim under the NYLL are comparable to those of a FLSA retaliation claim.  *See Eschmann v. White Plains Crane Serv., Inc.*, No. 11 Civ. 5881 (KAM) (VVP), 2014 WL 1224247, at *10 (E.D.N.Y. Mar. 24, 2014) (citing *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011)).

[11] The antiretaliation provision of Title VII, 42 U.S.C. § 2000e-3, precludes "discriminat[ing] against any individual . . . because he has opposed any practice" prohibited by Title VII.

Rather, a plaintiff must simply show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68.

The same reasoning applies in the context of retaliation under the FLSA. Courts in this circuit have held that the "same basic analysis applies to retaliation claims under either statute" because both are "remedial statutes whose effectiveness depends on the employee's ability to bring claims thereunder with impunity." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.19 (S.D.N.Y. 2008); *see also Mullins*, 626 F.3d at 53 (applying *Burlington Northern* retaliation standard under Title VII to a FLSA retaliation action). Furthermore, "[c]ourts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions, even though they do not arise strictly in an employment context." *Torres*, 628 F. Supp. 2d at 472. Accordingly, the fact that Defendants' filing of a counterclaim occurred after the end of Ozawa's employment is immaterial.[12]

On the other hand, there is some question as to whether Ozawa's retaliation theory—based on Defendants' filing of a counterclaim—is viable. Courts in this circuit have held that the filing of a "baseless pleading" by an employer against an employee bringing a FLSA case can

---

[12] Defendants repeatedly cite a contrary rule found in *Ginsberg v. Valhalla Anesthesia Assocs., P.C.*, 971 F. Supp. 144, 148 (S.D.N.Y. 1997), where the court stated that "[a]n adverse employment action must affect the terms, privileges, duration, or conditions of the plaintiff's employment." The Court concludes that *Ginsberg*'s reasoning on this point was abrogated by *Burlington Northern*. Several courts of appeals have also determined that an adverse action may be retaliatory even if it takes place after the end of the plaintiff's employment. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008) (citing cases). Other courts in this district, however, have continued to look to whether the adverse action affected the employment relationship. *See Marchuk v. Faruqi & Faruqi, LLP*, No. 13 Civ. 1669 (AKH), 2015 WL 363625, at *5 (S.D.N.Y. Jan. 28, 2015) (concluding, in a Title VII case, that plaintiff could not show that counterclaims constituted retaliation because she "d[id] not identify any aspect of her working conditions that changed after the counterclaim was filed").

constitute an adverse action giving rise to a claim of retaliation. *See Flores v. Mamma
Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013); *Torres*, 628 F. Supp.
2d at 472-73. But "[w]hether or not an employee can claim retaliation because he or she has
been sued in a *well-founded* lawsuit is an open question," *Marchiano v. Berlamino*, No. 10 Civ.
7819 (LBS), 2012 WL 4215767, at *6 (S.D.N.Y. Sept. 20, 2012) (emphasis added), because
"there may be constitutional limitations on retaliation claims involving the exercise of . . . legal
rights." *Holleman v. Art Crating Inc.*, No. 12 Civ. 2719 (VMS), 2014 WL 4907732, at *49
(E.D.N.Y. Sept. 14, 2014); *accord Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 465
(S.D.N.Y. 2013) (stating that if an employer's claim has merit, it is unclear if it "can amount to
retaliation as a matter of law").[13] Here, Ozawa does not truly contend that the counterclaim filed
against her is frivolous: though she appears to contest whether ODA's timekeeping records are
accurate, she all but concedes that ODA's claim is not baseless and that she may have been
overpaid for days of leave that she did not in fact accrue or that she had already used.[14] (*See* Pl.
56.1 Response ¶¶ 40-41; Ozawa Br. at 25.) Thus, it is likely that Ozawa's retaliation claim
would be barred as a matter of law, because Defendants' counterclaim constitutes a valid attempt
to exercise their legal rights.

It is unnecessary, however, to decide the question whether the Constitution limits FLSA
and NYLL retaliation claims in the circumstances of this case. Even assuming *arguendo* that
Ozawa has asserted a legally viable theory of retaliation, these claims fail nonetheless. Ozawa
established a prima facie case of retaliation—a *de minimis* burden, *see Torres*, 628 F. Supp. 2d at

---

[13] The parties have not briefed whether there are constitutional limitations on FLSA retaliation
claims, although case law they cite in their briefs raises the issue. *See Torres*, 628 F. Supp. 2d at
473 n.21.

[14] While at one point in her briefing, Ozawa calls the counterclaim a "baseless lawsuit," she
contradicts this characterization by conceding in the same paragraph that the counterclaim might
"ultimately [be] meritorious." (Ozawa Opp. at 23 (emphasis omitted).)

472—by demonstrating that she engaged in activity protected by the statute by filing a wage and hour lawsuit, then suffered an adverse action in having a claim filed against her. Ozawa's showing of causation is sufficient at the prima facie stage, where the "causal connection between an adverse action and a plaintiff's protected activity may be established . . . by showing that the protected activity was closely followed in time by the adverse action." *Mullins*, 626 F.3d at 53 (internal quotation marks omitted). At the second stage, Defendants have presented some evidence that Ozawa was overpaid for her accrued days of leave—a legitimate, non-retaliatory reason for filing the unjust enrichment counterclaim. The burden then shifts back to Ozawa to support a finding that Defendants' proffered reason is a pretext for discrimination, *see Mullins*, 626 F.3d at 53-54, and she has failed to meet that burden.

At the pretext stage, Ozawa's evidence of a causal connection between the protected activity and adverse action is deficient as a matter of law. Ozawa points only to the undisputed fact that Defendants did not initially demand that she repay the purported overpayment despite knowing of its existence; instead, Defendants waited until after Ozawa had filed this lawsuit to bring the unjust enrichment counterclaim in an attempt to recoup the overpayment. (Def. 56.1 Response ¶¶ 72-74.) Orsini, in her deposition, denied that Defendants' counterclaim was brought about "solely" by Ozawa's lawsuit. (Orsini Depo. at 160-61.) Thus, at its core, Ozawa's retaliation claim relies on the temporal proximity between the protected activity—her filing of this lawsuit—and the filing of the counterclaim by Defendants shortly thereafter in their answer to the complaint, although they had not asserted it before.

This does not suffice. While temporal proximity between protected activity and an allegedly adverse action "may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation," it is not enough at the summary judgment phase: "without more, such temporal proximity is insufficient to satisfy appellant's burden to bring

forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) (addressing retaliation in the Title VII context).

Because Ozawa has presented no competent evidence of pretext, there is no genuine issue of material fact that could be decided in her favor. Accordingly, Defendants' motion for summary judgment is granted on Ozawa's FLSA and NYLL retaliation claims, and Ozawa's motion for summary judgment on these claims is denied.

### 5.    Defendants' State Law Counterclaim for Unjust Enrichment

As noted in the previous section, Defendants claim that Ozawa was unjustly enriched because ODA overpaid Ozawa for two days of work. When Ozawa was terminated, according to Defendants, Ozawa had accrued 12 days of leave and used nine of those days. (Orsini Aff. ¶ 36.) However, Defendants assert that ODA mistakenly paid Ozawa for five days of leave instead of three, and claims that it is owed $384.61 for the two extra days' pay. (*Id.* ¶¶ 36-38; Pl. 56.1 Response ¶ 41.)

Before reaching the merits of the unjust enrichment claim, the Court must consider whether it has subject matter jurisdiction over the counterclaim. In a civil action in which it has original jurisdiction, a district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).[15] To constitute the same Article III case or controversy, the "state and federal claims must derive from a common nucleus of operative fact."[16] *United Mine Workers v. Gibbs*, 383

---

[15] Defendants have advanced no basis for jurisdiction over their state law counterclaim other than supplemental jurisdiction.

[16] Relatedly, Rule 13 of the Federal Rules of Civil Procedure states that a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A compulsory counterclaim "does not require an

U.S. 715, 725 (1966).  "In determining whether two disputes arise from a common nucleus of

operative fact," courts query "whether the facts underlying the federal and state claims

substantially overlapped or the federal claim necessarily brought the facts underlying the state

claim before the court."  *Achtman v. Kirby, McInerny & Squire, LLP*, 464 F.3d 328, 335 (2d Cir.

2006) (alterations and internal quotation marks omitted).  "In general, federal courts adhere to

the precept that subject matter jurisdiction is determined based on the circumstances at the time

of filing."  *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 462 (S.D.N.Y. 2013)

(citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004)).

Here, the facts underlying Defendants' counterclaim are essentially distinct from those

supporting Ozawa's original FLSA and NYLL claims for overtime.[17]  Ozawa's overtime claims

involve the nature of her work at ODA and the number of hours she spent doing so, while

Defendants' counterclaim focuses only on the question whether Ozawa was paid for days of

leave time that she had already used.  There has been no showing that the evidence necessary to

the state law counterclaim overlaps with the evidence underlying Ozawa's overtime claims.

Furthermore, other courts have held that the fact of an employment relationship "does not

---

absolute identity of factual backgrounds, [but] the essential facts of the claims must be so
logically connected that considerations of judicial economy and fairness dictate that all the issues
be resolved in one lawsuit."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004)
(internal citation, brackets, and quotation marks omitted).  All other counterclaims are
permissive.  Fed. R. Civ. P. 13(b).  Even a permissive state law counterclaim, however, may be
subject to the Court's supplemental jurisdiction if the counterclaim is so related as to be a part of
the same "case" within the meaning of Article III.  *See Jones*, 358 F.3d at 213-14.

[17] Ozawa's FLSA *retaliation* claim, unlike the overtime claims, is premised entirely on
Defendants' filing of the state law unjust enrichment counterclaim against her in this lawsuit.  As
a result, there is substantial overlap between the factual underpinning for the federal retaliation
claim and the counterclaim.  However, the Court does not consider the retaliation claim in the
supplemental jurisdiction analysis, since the retaliation claim had not been filed as of the initial
filing of Defendants' counterclaim.  Reliance for jurisdictional purposes on the FLSA retaliation
claim would be circular: the retaliation claim itself is based on the Defendants' filing of the state
law counterclaim.

establish a 'common nucleus of operative fact' where it is the sole fact connecting [a plaintiff's] federal overtime claims and [a defendant's] state law counterclaims." *Torres*, 628 F. Supp. 2d at 468 (citing cases); *see also, e.g.*, *Shearon v. Comfort Tech. Mech. Co.*, No. 12 Civ. 96, 2014 WL 1330751, at *3 (E.D.N.Y. Mar. 31, 2014).  Because there is little beyond the employment relationship that joins the state law counterclaim with Ozawa's overtime claims, the Court concludes that it lacks jurisdiction over Defendants' state law counterclaim.  Accordingly, Defendants' motion for summary judgment on the unjust enrichment counterclaim is denied, and the counterclaim is dismissed without prejudice.

### B.  Motion to Strike

Ozawa also moves to strike paragraph 18 of Orsini's affidavit dated August 14, 2014. (Dkt. No. 111 ("Ozawa Opp.") at 18.)  In this paragraph, Orsini stated that she spoke to ODA's attorneys and accountants about the overtime requirements of the FLSA, and was told that the position occupied by Ozawa's predecessor "could be properly classified as exempt" based on the duties and salary of the job.  (Orsini Aff. ¶ 18.)  According to Ozawa, Defendants have refused to produce evidence regarding legal advice they received concerning compliance with state and federal law.  (Ozawa Opp. at 19.)

 "[T]he attorney-client privilege cannot at once be used as a shield and a sword."  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  Accordingly, "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."  *Skylines Steel, LLC v. PilePro, LLC*, No. 13 Civ. 8171 (JMF), 2015 WL 556545, at *3 (S.D.N.Y. Feb. 9, 2015) (internal quotation marks omitted).  "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."  *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).

Because disputed facts preclude summary judgment on the issues of willfulness and good faith even without consideration of the contested portion of Orsini's affidavit, the motion to strike paragraph 18 of Orsini's affidavit is denied as moot and without prejudice.  The issue may be raised again in motions in limine or at trial if Defendants intend to rely on Orsini's legal consultation regarding the wage and hour laws to demonstrate good faith or to counter Ozawa's claim of willfulness.  *See Miteva v. Third Point Mgmt. Co., L.L.C.*, 218 F.R.D. 397, 398 (S.D.N.Y. 2003).

**III.    Conclusion**

For the foregoing reasons, it is hereby ordered that:

Ozawa's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, Ozawa's motion is granted to the extent that Ozawa has established as a matter of law that Orsini was her employer pursuant to the FLSA and the NYLL.  Ozawa's motion is denied on the issues of (1) whether Ozawa qualifies for the administrative exemption and (2) whether Defendants acted in good faith with regard to their obligations under the wage and hour laws.  Ozawa's motion is also denied as to liability for Ozawa's FLSA and NYLL overtime claims and as to Ozawa's FLSA and NYLL retaliation claims.

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' motion is granted as to Ozawa's FLSA and NYLL retaliation claims, and those claims are dismissed.  Defendants' motion for summary judgment is denied as to Ozawa's FLSA and NYLL overtime claims, and also on the issues of (1) whether Ozawa qualifies for the administrative exemption and (2) whether Defendants willfully violated the FLSA and NYLL.  Defendants' counterclaim for unjust enrichment under state law is dismissed without prejudice for lack of subject matter jurisdiction.

Ozawa's motion to strike is DENIED as moot and without prejudice.

As set out in the Court's order dated August 19, 2014 (Dkt. Nos. 101, 105), the parties are directed to file a revised proposed scheduling order for trial within 30 days of this decision.

The Clerk of the Court is directed to terminate the motions at docket numbers 91, 97, and 109.

SO ORDERED.

Dated: March 11, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge